**ORIGINAL**

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

V.

**LARRY GENE YOUNG**

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:12-MJ-00422

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about March 4, 2012 in Henry County, in the Southern District of Indiana defendant did, (Track Statutory Language of Offense)

Sexual Exploitation of a Child

in violation of Title 18, United States Code, Section 2251(a). I further state that I am a Task Force Officer and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

John D. Pirics

Sworn to before me, and subscribed in my presence

June 27, 2012
**Date**

at Indianapolis, Indiana
**City and State**

Kennard P. Foster, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## **AFFIDAVIT**

I, John Pirics, being duly sworn, do hereby depose and state:

1. I am employed as a Detective with the Carmel Police Department, and I am currently assigned to the Hamilton County Metro Child Exploitation Task Force. I have been employed by the Carmel Police Department as an officer since 1995. I have received extensive training in child sexual exploitation investigation from several sources, including the Internet Crimes Against Children Task Force, the Purdue University Cyber Forensics program, the United States Attorney's Office, and the National Center for Missing and Exploited Children. I have written numerous search warrants involving internet crimes against children cases and participated in their execution. I am currently assigned to operate in an undercover capacity on the Internet to identify and investigate persons attempting to exploit or solicit sexual acts with children or trafficking in child pornography. I am also a cross designated task force officer with US Homeland Security Investigations (HSI) (formerly US Immigration and Customs Enforcement, Office of Investigations).

2. The information contained within this affidavit is based on my personal observations, training, and experience, as well as information related to me by other law enforcement officers.

3. I am submitting this affidavit in support of a Arrest Warrant and Criminal Complaint charging Larry Young with sexual exploitation of a child, in violation of 18 U.S.C. § 2251.

4. Because this affidavit is being submitted for the limited purpose of securing an Arrest Warrant and Criminal Complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Larry Young has committed this offense. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. Title 18 United States Code § 2251(a) prohibits any individual from employing, using, persuading, inducing, enticing, or coercing any minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such individual knows that the such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.

6. In relevant part, the term "sexually explicit conduct" means the actual or simulated . . . lascivious exhibition of the genitals or pubic areas of any person. 18 U.S.C. § 2256.

## The Investigation

7. On 5/31/2012, I was made aware of a possible production of child pornography case. I called the complainant, Kelli Cheesman, who made the following statements:

    a. On 3/4/12, at approximately 3:00 p.m., Cheesman was called into work and she needed a babysitter. She contacted her step-father, Larry Young, and asked him to babysit the two children in Cheesman's residence: John Doe, 6 years old, and Jane Doe, 4 years old.

    b. Larry Young arrived shortly thereafter and Cheesman then left for work.

    c. When Cheesman returned home at approximately 7:40 p.m. that same day, Young left the residence.

    d. A few hours later, Cheesman found a cellular telephone in her residence. She recognized that this phone was left there by Larry Young. Cheesman then began looking at the photos on the phone and found two photos of John Doe 1, which appeared to have been taken while Cheesman was at work earlier that day.

    e. The first photo showed a close up image of John Doe 1's nude penis.

    f. The second photo showed John Doe 1 bending over, with his pants down and his buttocks visible. Cheesman noticed that second photo was titled with John Doe 1's name.

    g. Cheesman contacted the New Castle Police Department reported what she had found.

8. After speaking with Cheesman, I received a copy of the initial report made by Officer Williams of N.C.P.D. According to this report he went to Cheesman's residence in response to her call to his department. Cheesman showed Officer Williams the two photos described above.

9. Williams observed that one of the photos was of a child's penis, and the other was of a child's buttocks. The time stamps on the photos were 6:08 p.m. and 7:28 p.m., respectively.

10. Williams was advised that the AT&T phone belonged to Larry Young, and that the phone number of the device was XXX-XXX-1091 (redacted, but known to the affiant).

11. Office Williams' report noted that the photos were contained with a folder whose file path was MENU/MY STUFF/PHOTOS.

12. After taking the report, Williams left Cheesman's residence with the phone.

13. Williams secured the phone in an evidence locker at the New Castle Police Department (NCPD), 227 North Main Street, New Castle, IN 47362. It is described as a black AT&T phone, with an assigned tag number of 12-003687 and a property number of 130497. The phone remained secured at NCPD.

14. On 6/25/12, Kelli Cheesman brought John Doe and Jane Doe to the Cherish Center in Noblesville, IN so that child forensic interviews could be conducted.

a. John Doe was unable to be interviewed because he suffers from autism.

b. During Jane Doe's interview, she disclosed that she had been molested on more than one occasion by Larry Young, who had fondled her in her genital area. Jane Doe provided details about one of the incidents before saying that she did not want to talk about it any further. The interview was terminated at that point.

15. After Jane Doe's interview, I spoke with Kelli Cheesman. During our conversation, Cheesman provided the following additional details:

    a. Approximately two weeks before she discovered the photos on Larry Young's phone, Jane Doe attended a birthday party.

    b. During this party, Larry Young and Nancy Young, who is Kelli Cheesman's mother, took several pictures of Jane Doe using the same phone.

    c. After the party, Larry Young repeatedly told Kelli Cheesman that she could look at the photos on his phone and figure out if there was a way to download the pictures so that Kelli could have copies.

    d. On March 4, 2012, Larry Young made this same offer for Kelli Cheesman to look at the pictures on the phone while she was at Nancy and Larry's residence, and before Kelli Cheesman was called into work.

    e. After returning from work and finding that Larry Young had left his phone behind, Kelli opened the phone to look at the party photos

because she felt that she had standing permission from Larry to do so.

16. On 6/26/12, I met with Nancy Young in New Castle, Indiana. Nancy agreed to speak with me about the investigation, and provided the following statements:

    a. Nancy heard about the pictures on Larry's phone from Kelli Cheesman a few days after they were discovered. Nancy confronted Larry Young about the photos. He initially did not confirm or deny taking them. However, Larry Young then told Nancy that John Doe was acting inappropriately due to his autism, that part of this behavior was sexual in nature, and that the behavior involved John Doe taking his clothes off.

    b. Larry Young told Nancy Young that he took the photos of John Doe to document his behavior, so that he could later show it to Kelli Cheesman.

    c. Nancy Young advised that she was the owner of the phone, that she purchased the phone and put it on her plan, and that she pays the bill for the phone from her bank account.

    d. Nancy does not have any joint bank accounts with Larry Young.

    e. Nancy can use the phone when she wants to, and there is no password protection or screen lock of any type enabled on the phone.

    f. At the end of the conversation, Nancy Young provided me with written consent to search the phone for images and videos.

17. I went to the NCPD, retrieved the phone, and searched it for images and videos. I located three images that appeared to be nude images of John Doe.

   a. The first image (Image 1) is an extreme close up of the nude genitals of a prepubescent child.

   b. The second image (Image 2) is of the nude buttocks of a child, who appears to be bent over with his pants pulled down. Image 2 had been renamed with John Doe's first and middle name.

   c. Both Image 1 and 2 were located in the photos section of the phone. The third image (Image 3) was located as an attachment to a saved draft of a text message.

   d. Image 3 is a photo of a prepubescent male child from the mid-torso down. The child is facing the camera and his genitals are exposed. They are the focal point of the image.

18. After leaving the NCPD, I met with Larry Young in his residence located at 570 North Main Street in New Castle, IN. As SA Johnson and I approached the residence, Larry Young opened the door and invited us in. We identified ourselves to Young, and I advised him that we would like to speak to him about the pictures that he had taken of John Doe. Young invited us to sit down, and I then explained his Miranda rights to him. Young advised that he understood his rights, and then waived them by signature. Young then made the following statements:

   a. The phone used to take the photos is the property of Nancy Young. Nancy Young purchased the phone and pays the bill for the service. After agreeing to have the phone accessed so that he could view the images, Young advised that he had taken Image 1 and Image 2. Young advised that he did not remember Image 3.
   b. Young maintained that he was under a lot of stress at the time, and that he could not remember if he had taken Image 3 or not.
   c. After initially claiming that he had taken the images to document John Doe's behavior, Young recanted this and admitted that he took the images because he has a sexual attraction to male children between 8 and 10 years of age. He admitted that he was curious to see what pictures of that type would look like.
   d. Young later advised that he had been feeling like he was under a lot of pressure from both Kelli and Nancy, and that he wanted out of the family.
   e. Young stated that after taking the pictures, he intentionally left his phone behind at Kelli Cheesman's residence knowing that the pictures would be discovered and he could be free of his marriage to Nancy and his relationship with her daughter Kelli.
19. The phone described above was manufactured outside the state of Indiana.
20. Based upon the foregoing, there is probable cause to believe that Larry Young as sexually exploited a child, in violation of 18 U.S.C. § 2251. I therefore request the Court to issue an Arrest Warrant and Criminal

Complaint charging him with committing this offense, on or about March 3, 2012.

_____
John D. Pirics, Task Force Officer
Homeland Security Investigations


SUBSCRIBED TO AND SWORN BEFORE ME THIS 27th DAY OF JUNE, 2012

_____
U.S. Magistrate Judge